UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| RICHARD P. JOHNSON ) | Case No. 09-16345-SSM |
| SSANG K. JOHNSON ) | Chapter 7 |
| ) | |
| Debtors ) | |

## MEMORANDUM OPINION AND ORDER
## SUSTAINING OBJECTION TO CLAIM OF EXEMPTIONS

A hearing was held on November 3, 2009, on the objection by Gordon P. Peyton, chapter 7 trustee, to the debtors' claimed exemption of $30,500 in funds withdrawn from the husband's federal Thrift Savings Plan the day prior to the bankruptcy filing. The trustee and the debtors were each represented by counsel. The court ruled from the bench that the objection would be sustained except for approximately $10,882 as to which a valid homestead exemption had been perfected. The purpose of this opinion is to explain more fully, for the benefit of the parties and any reviewing court, the reasons for the ruling.

Background

Richard P. Johnson is a federal employee. His wife, Ssang K. Johnson, is a homemaker. On August 6, 2009, they filed a joint voluntary petition in this court for relief under chapter 7 of the Bankruptcy Code. Among the assets listed on their schedules was $9,500 in a checking account and $18,000 in a savings account at "BB&T" (Branch Banking & Trust Company). The debtors represent—and the trustee does not dispute—that the money in the two accounts ultimately derives from a $33,563.74 withdrawal from Mr. Johnson's federal Thrift Savings Plan.

1

The withdrawal was initiated, according to the debtors, on or about August 1, 2009, when the account was "cashed out." The funds were then directly deposited into Mr. Johnson's checking account at Pentagon Federal Credit Union on August 5, 2009. Prior to the deposit, the account balance was $1,874.49. That same day, a total $34,918.23 was withdrawn from the account. One of the withdrawals was a cashier's check for $30,918.23, which was deposited into newly-established checking and savings accounts at BB&T, with $12,918.23 being deposited in the checking account and $18,000 int the savings account.[1]

On their schedules, the debtors claimed an exemption under the Virginia homestead exemption for the entirety of what was represented to be $9,500 in the BB&T checking account and $906.97 of the $18,000 in the BB&T savings account. On September 10, 2009, the day prior to the meeting of creditors, the debtors recorded a homestead deed claiming $9,500 in the checking account and $881.97 in the savings account as exempt. The following day, the debtors filed amended schedules that (1) increased the amount in the checking account to $12,500, and (2) claimed both the checking and savings account "100%" exempt under 11 U.S.C. § 541(c)(2) and the Virginia homestead exemption. The present objection followed.

Discussion

As filed, the trustee's objection challenged not only the claimed exclusion of the accounts under § 541(c)(2) of the Bankruptcy Code but also the homestead exemption, since the trustee had not yet been furnished with a copy of a recorded homestead deed. In response, the debtors

---

[1] The checking account had been opened the day before with an initial deposit of $50.00. The savings account was opened the day of the deposit. The combined balance of the two accounts on the date the petition was filed was $30,968.23.

provided a copy of the recorded homestead deed claiming $9,500 in the BB&T checking account and $881.97 in the BB&T savings account as exempt. The total of all items exempted on the homestead deed is $10,500, which the trustee concedes is the amount to which the debtors are entitled. Accordingly, the court finds that $10,381.97 of the funds in the two accounts are exempt under the Virginia homestead exemption.

The remaining issue, then, is the debtors' assertion that because the funds in the BB&T account derived from cashing out Mr. Johnson's federal Thrift Savings Plan, and because they were ultimately deposited in segregated bank accounts, they are insulated from the claims of the trustee and creditors. The trustee acknowledges that property of a debtor's bankruptcy estate does not include a beneficial interest in property that is subject to an enforceable restriction on transfer under applicable non-bankruptcy law. § 541(c)(2), Bankruptcy Code. The Supreme Court has held that funds held in retirement plans that are subject to the anti-alienation provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") fall within the § 541(c)(2) exclusion and cannot be administered by the trustee. *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Since funds held in a federal Thrift Savings Plan are likewise statutorily protected against assignment or attachment, they also are excluded from the bankruptcy estate. 5 U.S.C. § 8437(e)(2); *In re Hasse*, 246 B.R. 247, 249 n.1 (Bankr. E.D. Va. 2000).[2]

---

[2] As this court explained in *Hasse*, "The Thrift Savings Plan is a tax-deferred retirement savings plan for Federal civilian employees established under the Federal Employees' Retirement Act of 1986, 5 U.S.C. §§ 8401 et seq." 246 B.R. at 252. It "offers Federal civilian employees the same type of savings and tax benefits that many private corporations offer their employees under so-called '401(k) plans." *Id.* For tax purposes, contributions to or distributions from the Thrift Savings Plan are treated in the same manner as contributions to or distributions from a 401(k)
(continued...)

Since the funds at issue here, however, had been voluntarily *withdrawn* from the Thrift Savings Plan prior to the bankruptcy filing, the question is whether they retained their exclusionary status, given that the debtors were free to spend them as they wished. The court agrees with the trustee that the funds, once withdrawn, became property of the debtor free from any restriction on alienation enforceable under non-bankruptcy law, and as such, they were not excluded from property of the estate under § 541(c)(2). *See In re Ekanger*, 1999 WL 671866 (Bankr. E.D. Va. 1999) (holding that funds "rolled-over" prepetition from an ERISA-qualified pension plan into an individual retirement account (IRA) lost their excluded status and were exempt only to the limited extent provided by the Virginia exemption for IRAs).[3] This is not a case, it must be stressed, in which the funds were withdrawn from one qualified retirement plan or account and then "rolled-over" into another. Even ignoring the passing of the funds through an ordinary checking account prior to their deposit into newly-created accounts at BB&T, there is no assertion by the debtors that the BB&T accounts are themselves tax-qualified retirement accounts or are subject to any restriction on the debtor's alienation or use of the funds. They are property of the debtors, pure and simple, and thus plainly fall within the expansivve definition of

---

[2](...continued)
plan. § 5 U.S.C. § 8440.

[3] The limitation discussed in *Ekanger* as to the amount that could be held exempt in an IRA has since been superceded by statute. The Virginia statute now provides that an interest in a "retirement plan"—the definition of which extends to IRAs—"shall be exempt . . . to the same extent permitted under federal bankruptcy law for such a plan." Va. Code Ann. § 34-34(B). For debtors who elect (or are required to take) state exemptions, the Bankruptcy Code exempts "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." § 522(b)(3)(C), Bankruptcy Code. Since IRAs are governed by § 408 of the Internal Revenue Code, funds held in such an account are exempt under § 522(b)(3)(C).

property of the estate in § 541(a)(1), Bankruptcy Code ("all legal or equitable interests of the debtor in property as of the commencement of the case").

The debtors cite no case authority for the proposition that money in a qualified retirement account retains its exempt character after it is withdrawn. Indeed, the reported cases are directly to the contrary. *In re Johnston*, 218 B.R. 813 (Bankr. E.D. Va. 1998) (distributions to debtor from her former husband's ERISA-qualified pension plan were not excluded from the bankruptcy estate); *In re Moore*, 214 B.R. 628 (Bankr. D. Kansas 1997) (retirement benefits paid to debtor from ERISA-qualified plan were not exempt after being deposited in her bank account);[4] *In re Caslavka*, 179 B.R. 141, 143 (Bankr. N.D. Iowa 1995) (holding in *Shumate* is limited to the funds held in the plan and not to funds transferred therefrom); *In re Cesare*, 170 B.R. 37 (Bankr. D. Conn. 1994) (holding that funds withdrawn from a terminated pension plan were not excluded from property of the estate). Instead, the debtors appeal to the court's general sense of equity and urge that they should not be deprived of the funds—which would have been fully protected had they remained in the Thrift Savings Plan—"on the mere technicality of having withdrawn the funds less than one week prematurely." Debtor's [*sic*] Response, ¶ 1. The court is not persuaded. Any perceived unfairness is solely the result of the debtors' own actions in withdrawing the funds in the first instance. While the court accepts the debtors' representation that they initiated the withdrawal before consulting counsel and before deciding that a chapter 7 filing made more sense than using the funds to pay debts and catch up on mortgage payments, the fact that in hindsight the withdrawal of the funds was ill-advised and did not ultimately advance

---

[4] The *Moore* decision distinguished ERISA-qualified retirement benefits from Social Security and Veterans benefits, which, under the specific statutory language protecting them, remain exempt even if commingled in an ordinary bank account. *Moore*, 214 B.R. at 631.

the debtors' goals is not a basis for extending an exemption (or exclusion from property of the estate) beyond its plain terms.

## O R D E R

For the foregoing reasons, it is

**ORDERED** that the trustee's objection is sustained in part and overruled in part.  The claimed 100% exclusion under § 541(c)(2) of the Bankruptcy Code of the funds in the BB&T savings and checking accounts is disallowed.  However, the claimed exemption, under the Virginia homestead exemption, of $9,500 of the balance in the BB&T checking account and of $881.97 of the balance in the savings account is allowed.

Date: _____           _____
                                                Stephen S. Mitchell
Alexandria, Virginia                            United States Bankruptcy Judge

Copies to:

Derek K. Prosser, Esquire
Tyler, Bartl, Ramsdell & Counts, PLC
700 S. Washington St., Suite 216
Alexandria, VA 22314
Counsel for the debtors

Richard P. Johnson
Ssang K. Johnson
12690 Arthur Graves Jr. Ct.
Bristow, VA 20136
Debtors

Gordon P. Peyton, Esquire
Redmon, Peyton & Braswell
510 King Street, suite 301
Alexandria, VA  22314
Chapter 7 trustee